**Julie FASCHING, Appellee,**

v.

**Richard BACKES, N.D. Highway Commissioner, Appellant.**

**Civ. No. 890347.**

Supreme Court of North Dakota.

March 1, 1990.

Steven Francis Lamb, Asst. Atty. Gen., North Dakota Dept. of Transp., Bismarck, for appellant.

Vinje Law Firm, Bismarck, for appellee; argued by Ralph A. Vinje.

GIERKE, Justice.

This is an appeal by the North Dakota State Highway Commissioner (Commissioner) from a district court judgment reversing the Commissioner's suspension of Julie Fasching's (Fasching) driving privileges for 364 days as a result of a driving under the influence of alcohol charge. We reverse.

Fasching was stopped by Sheriff Duane Snider (Sheriff Snider) of the Morton County Sheriff's Department on January 1, 1989, because of his observation that she was driving erratically. After approaching Fasching's vehicle and speaking with her, Sheriff Snider requested that she step out of her car. After speaking with her and observing her while she was out of her car, Sheriff Snider concluded that Fasching had been drinking alcohol and consequently requested her to get into his patrol car in order to conduct field sobriety tests. At that time, Fasching's passenger, Debra Holter (Holter), informed Sheriff Snider that she was an attorney and that she wanted to sit in the patrol car with Fasching. Sheriff Snider did not allow Holter's request. After Sheriff Snider had begun to conduct field sobriety tests on Fasching, Holter approached the patrol car to find out what was going on and to advise Fasching. Once again, Sheriff Snider told Holter to get back into Fasching's car and wait.

Following the field sobriety tests, Sheriff Snider arrested Fasching for driving under the influence of intoxicating liquor. After being taken to the Mandan Law Enforcement Center, Sheriff Snider conducted an intoxilyzer test on her. The test indicated that Fasching had been operating her automobile with a blood-alcohol content in excess of ten one-hundredths of one percent by weight in violation of Section 39–08–01(1)(a), N.D.C.C. Fasching was issued a temporary driver's license and was notified of the Commissioner's intention to suspend her driver's license. Fasching submitted a

timely request for an administrative hearing.

At the administrative hearing, Fasching argued that she was denied her constitutional right to an attorney both out on the highway and at the police station. Fasching testified at the administrative hearing that, after she requested to speak with Holter, Sheriff Snider told her that she could not consult with Holter until after the intoxilyzer test was completed. Holter, who testified via deposition, stated that she was repeatedly not allowed to speak with Fasching at the Law Enforcement Center until after the intoxilyzer test had been completed in addition to being denied access to Fasching out on the highway. However, Sheriff Snider testified that, despite the fact that he told Fasching that she had a right to consult an attorney before taking the intoxilyzer test, Fasching agreed to take the test without consulting Holter. Further, Sheriff Snider testified that Fasching's request to talk to Holter involved personal matters rather than matters related to her arrest.

Thus, Fasching argued that, since she was denied her right to counsel, her arrest was illegal and all evidence obtained as a result of the arrest should be suppressed. The Commissioner did not agree with Fasching's argument concluding that "Fasching was allowed advice from her attorney on the test, but that it was not used ... and she was more concerned if the attorney was okay." However, the district court reversed the Commissioner stating that Section 29–05–20, N.D.C.C.,[1] applies to both the attorney's right to consult with the accused and also to the accused's right to consult with an attorney. Finding that the statute had been violated, the district court suppressed the result of the intoxilyzer test thereby reversing the Commissioner's decision and reinstating Fasching's driving privileges. This appeal followed.

Recently, this Court addressed the issue of evidentiary admissibility of a fairly administered intoxilyzer test when the accused's right to an attorney had been violated in *Holte v. State Highway Com'r*, 436 N.W.2d 250 (N.D.1989).

In *Holte*, Arden Holte was arrested for driving under the influence of intoxicating liquor in violation of Section 39–08–01, N.D.C.C. Prior to the administration of the intoxilyzer test on him, Holte requested to be allowed to contact his attorney. Police officials denied his request stating that he could "call anybody you want once we get done." Holte was subsequently convicted as he failed the intoxilyzer test.

At the civil administrative hearing, the results of the intoxilyzer test were received into evidence and Holte's driving privileges were suspended. On appeal to this Court, Holte argued that the intoxilyzer test results were improperly admitted into evidence due to the fact that he was denied access to his attorney prior to the administration of the intoxilyzer. *Holte, supra*, 436 N.W.2d at 251.

In a majority opinion, this Court recognized that constitutional protections afforded in criminal proceedings are not applicable in administrative license-suspension proceedings. This Court refused to extend the evidentiary exclusion rule to civil proceedings by agreeing with the following rationale of the Iowa Supreme Court:

" 'The benefit of using reliable information of intoxication in license revocation proceedings, even when that evidence is inadmissible in criminal proceedings, outweighs the possible benefit of applying the exclusionary rule to deter unlawful conduct. Consequently, the exclusionary rule formulated under the fourth and fourteenth amendments was inapplicable in this license revocation proceeding.' "

*Holte, supra*, 436 N.W.2d at 252 (citing *Westendorf v. Iowa Dep't of Transp.*, 400 N.W.2d 553, 557 (Iowa 1987)).

In this case, there is no evidence to suggest that Fasching's intoxilyzer test was improperly administered. Therefore, con-

---

1. Section 29–05–20, N.D.C.C., provides:
   "The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at his request, may visit such person after his arrest."

sistent with our reasoning in *Holte*, we find that the results of Fasching's intoxilyzer test were properly admitted into evidence at the civil administrative hearing and accordingly, we reverse the district court's judgment.

In light of our decision in *Holte, supra*, we decline to consider whether Fasching was denied her right to an attorney because the results of her fairly administered intoxilyzer test were properly admitted into evidence at the civil administrative hearing whether or not she was denied her right to an attorney. While not being relevant in this case due to our aforementioned disposition, we note that the district court's interpretation of Section 29–05–20, N.D.C.C., is inconsistent with our interpretation of that statute. In *Kuntz v. State Highway Com'r*, 405 N.W.2d 285, 287 (N.D.1987), we construed Section 29–05–20, N.D.C.C., as entitling the person arrested a reasonable opportunity to consult with an attorney before deciding to take a chemical test. While Section 29–05–20 is grammatically susceptible of being construed as the attorney's right to consult with the arrested person, we adhere to our previous interpretation of that section.

For the foregoing reasons, we reverse the district court judgment and accordingly affirm the commissioner's decision.

ERICKSTAD, C.J., and VANDE WALLE, J., concur.

LEVINE, Justice, dissenting.

In *Holte v. State Highway Commissioner*, 436 N.W.2d 250 (N.D.1989), the majority, disregarding the facts that made the issue of exclusion in that case moot, decided the issue anyway, holding that the exclusionary rule does not apply in civil license-suspension proceedings. That advisory opinion is now cited as the law of our state. I joined Justice Meschke's dissent in *Holte*, and I again dissent.

The majority in *Holte* and the majority in this case, severely limit our holding in *Kuntz v. State Highway Commissioner*, 405 N.W.2d 285 (N.D.1987), that NDCC § 29–05–20 entitles a person arrested for DUI to a reasonable opportunity to consult with an attorney before deciding whether to take the Intoxilyzer test. *See also Bickler v. North Dakota State Highway Com'r*, 423 N.W.2d 146 (N.D.1988). They also entirely denigrate North Dakota's traditional reverence for the right to counsel. *See State v. Orr*, 375 N.W.2d 171 (N.D. 1985). *Holte* was ill-advised and premature. Instead, we should apply the exclusionary rule in this case and follow the lead of the Alaska Supreme Court which held that the result of a test secured in violation of the right to counsel should be excluded in a civil license-revocation proceeding. *Whisenhunt v. Department of Public Safety*, 746 P.2d 1298 (Alaska 1987). *Accord Prideaux v. State Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976); *Gooch v. Spradling*, 523 S.W.2d 861 (Mo.Ct.App.1975); *Price v. North Carolina Dept. of Motor Vehicles*, 36 N.C.App. 698, 245 S.E.2d 518 (1978). Such a holding would ensure the integrity of administrative and judicial proceedings as well as deter the police misconduct that occurred in this case.

Our statute supports the exclusion of test results resulting from a violation of the right to counsel. Section 39–20–07(5), NDCC, makes the test results admissible only when "it is shown that the sample was properly obtained and the test was fairly administered...." Here, Fasching repeatedly requested to speak to her attorney before the test was administered. The sheriff, however, took it upon himself to adduce why she wanted to speak to her attorney and then, quite remarkably in my view, adjudged that her reasons were not acceptable. That is preposterous. It was none of the sheriff's concern why Fasching wished to speak to her attorney. She was entitled to consult with her attorney under § 29–05–20 without explaining her reasons and certainly without the sheriff's veto. Having been deprived of her right to counsel, how can it be said that the test was either "properly obtained" or "fairly administered"? Indeed, the stench of impropriety and unfairness is rank.

Under our holding in *Kuntz*, once Fasching expressed her desire to consult with

counsel, she should not have been subjected to the Intoxilyzer test until she was given reasonable opportunity to consult. *Cf. Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) [a suspect who has expressed desire to consult with counsel is not to be subjected to further police interrogation until counsel has been made available; *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) [applying *Edwards v. Arizona* rule to police interrogation of accused about offense unrelated to the subject of the initial police interrogation during which accused has requested counsel]. Having been deprived of her opportunity to consult counsel, Fasching should not be held to her uncounselled decision to take the test.

I agree with the Minnesota Supreme Court's rationale for exclusion of test results to accomplish the objective of fair treatment:

> "When the driver has been coerced into making a complicated decision without the assistance of counsel required by this opinion, he should not be bound by that decision, since he might have otherwise made it differently." *Prideaux v. State Dept. of Public Safety,* 247 N.W.2d at 395.

I would affirm Judge Schneider's decision reversing the administrative license suspension.

MESCHKE, J., concurs.